(No. 7040. December 16, 1942.)

PHILIP POSTON, a minor, by M. S. Poston his guardian ad litem, Respondent, v. LLOYD D. HOLLAR, Appellant.

[132 Pac. (2d) 142]

Verner R. Clements for appellant.

Durham & Hyatt for respondent.

HOLDEN, J.—March 25, 1940, defendant and appellant Hollar was driving his automobile north on 12th street located between the junior and senior high school buildings in Lewiston, Idaho. At the same time, two parked school busses were discharging children at the west curb of that street, on the east side of the senior high school building. Philip Poston, then a minor of 14 years of age and a junior high school student got off the rear bus. As he attempted to cross the street from a point between the two busses, he was struck by defendant's automobile. The left front fender of the Hollar car struck Philip in the stomach, turning him sidewise so that the car door struck him in the left arm. The ligaments of that arm were torn loose—

all of the flesh was laid back over his hand so that the bone was exposed to full view. A majority of the eighteen tendons in the forearm were badly lacerated and torn, requiring suturing; the muscles and nerves and fascia were torn on the anterior surface of the left forearm at the inner part of the arm. The radial nerve was severed; the supinators, or muscles which control the use of the hand and fingers were torn, and all the nerves in the forearm were severed; the bone was visible and required the suturing of nerves and muscles; particles of clothing were imbedded in the wound; after the suturing, blood poisoning set in and the boy was in the hospital about 33 days; after he was discharged from the hospital, he was required to return daily for a period of a month and a half for dressings for the infection and the sloughing; at the time of the trial, a large part of the forearm was insensible to pain—prickings with a pin failed to get any response from the boy over the injured area of the arm; the wound when healed left a large scar over the forearm so that the scar tissue interferes with the nerve supply to the skin, which condition cannot be remedied by surgery; and the use of the arm has been permanently impaired at least 25% of its natural possibilities.

February 27, 1941, this action was commenced by M. S. Poston, father and guardian ad litem of the minor boy, Philip Poston, to recover damages in the sum of $10,000 for the personal injuries so suffered by Philip, as well as for the recovery of special damages for medical care and hospitalization. The case was tried beginning November 28, 1941, by the court sitting with a jury. December 1, 1941, the jury returned a verdict in favor of plaintiff and respondent and against defendant and appellant for the sum of $896.96. December 8, 1941, plaintiff moved for a new trial upon the grounds: first, insufficiency of the evidence to justify the verdict; and secondly, "misconduct of the jury in that one or more of the jurors were induced to assent to the general verdict by the resort to the determination of chance." January 8, 1942, the trial court granted a new trial upon both the above-stated grounds, from which order defendant Hollar prosecuted an appeal to this court.

"Appellant's first assignment goes to the question of whether or not the evidence will sustain the order granting

a new trial. Is the evidence insufficient to sustain the verdict of $896.96 damages awarded respondent?"

In other words, it is the contention of appellant that the jury, under the evidence, awarded respondent adequate damages for the personal injuries sustained. On the other hand, it is the contention of respondent the amount awarded for such injuries was inadequate under all the facts and circumstances.

 The expense incurred for medical care and hospitalization is conceded by both parties to be $578.00. Deducting that amount from the verdict of $896.96 leaves $318.96, which latter amount must, and it is conceded does, represent the award for personal injuries. Boiled down, then, the question presented for determination is: whether the trial court erred in holding that $318.96 was inadequate under the evidence hereinbefore set forth in our statement of the facts. In passing upon this question, it should be emphasized that the trial judge saw the boy's injured arm. Then, too, and as pointed out in *Say v. Hodgin,* 20 Ida. 64, 68, 116 Pac. 410 [approved in *Turner v. First National Bank of Bancroft,* 42 Ida. 597, 601, 248 Pac. 14] :

"The trial judge sees the witnesses on the witness-stand, observes the manner of their testifying, notes their apparent candor or fairness, or the want of it; hears the argument of counsel, and, in short, is in possession of many sources of information valuable in an inquiry *as to whether justice has miscarried or not,* and which cannot be made to appear in the record of the case which comes to the appellate court; and appreciating such fact, appellate courts have so frequently held, that it may be announced as settled law, that trial courts possess a discretion to be exercised wisely in the granting or refusal of new trials, and that such discretion will not be by the appellate court disturbed unless it manifestly and clearly appears to have been exercised unwisely and to have been manifestly abused. Such has been the holding of this court in many cases." [Emphasis ours.]

Since *Say v. Hodgin,* supra, this court has uniformly held that a motion for a new trial is addressed to the sound legal discretion of the trial court, and that unless there has been a clear abuse of such discretion, an order granting a new trial will not be disturbed on appeal. (*Egbert v. Twin Falls Canal Co.,* 52 Ida. 39, 42, 11 P. (2d) 360; *Riggs*

*v. Smith,* 52 Ida. 43, 47, 11 P. (2d) 358; *Stone v. Matthies,* 49 Ida. 277, 278, 287 Pac. 951; *Turner v. First Nat. Bank of Bancroft,* supra.)

Under all the facts and circumstances disclosed by the record in the case at bar, we cannot say there has been a clear abuse of the sound legal discretion vested in the trial court. Furthermore, we are firmly committed to the rule that where a trial court, as in the instant case, is of the opinion that a verdict is not in accord with law or justice, he may grant a new trial. (*Egbert v. Twin Falls Canal Co.,* supra; and cases therein cited.)

Moreover:

"It should be remembered that, in passing upon a motion for a new trial, the appellate court applies a different rule to the consideration of an order *granting a new trial* from what it applies to the *denial of a new trial.* This difference is predicated on the grounds that, where a new trial is granted, both parties are put back in the status in which they found themselves on the original trial; and each party has his chance to present the case anew to the court and jury. Whereas, an order denying a motion for a new trial terminates the case and denies the losing party any chance of resubmitting his case or having it again heard by the court and jury." [*MacDonald v. Ogan,* 61 Ida. 553, 556, 104 P. (2d) 1106.]

Having reached the conclusion the action of the trial court in granting a new trial is sustainable upon the single ground of inadequacy of the award for personal injuries, it becomes unnecessary to pass on any other ground. (*Egbert v. Twin Falls Canal Co.,* supra; *Turner v. First Nat. Bank,* supra; *Tidd v. Northern Pac. Ry. Co.,* 46 Ida. 652, 656, 270 Pac. 138; *MacDonald v. Ogan,* p. 556, supra.)

Hence, we turn now to a consideration of the contention the trial court erred in instructing the jury. The court instructed the jury in the language of Subd. 26 of Sec. 1, 1925 S. L. [now Sec. 48-1101, I. C. A.], that "it shall be unlawful for anyone to drive any motor vehicle past a truck, bus or other vehicle being used by a school district to transport children to or from school, at a time when anyone is getting on or off said truck, bus or other vehicle."

Appellant contends that section was repealed by the Uni-

328

form Motor Vehicle Act, enacted in 1927 (Chap. 260, S. L. 1927, p. 482) and, therefore, that the instruction was erroneous.

In 1921, the legislature passed an Act (Chap. 249, S. L. 1921, p. 539) entitled:

"An act declaring laws of the road for the state of Idaho, * * *".

It did not contain the above-quoted section. That section, as above indicated, was enacted in 1925 by an Act (Chap. 48, S. L. 1925, p. 73) entitled:

"An Act adding new provisions to Chapt. 249 of the Idaho Session Laws for 1921, as amended by Chap. 39 of the Idaho Session Laws for 1923, relating to the laws of the road, to be designated as Subds. 26, 27, and 28 of Sec. 1 of said chapter, and providing that it shall be unlawful for anyone to drive a motor vehicle by a school truck, bus or other vehicle at a time when anyone is getting on or off, providing that such school vehicles shall be labeled with the number of the school district, and shall stop before crossing a railroad track."

Two years later the legislature passed on Act [Chap. 260, S. L. 1927, p. 482] entitled:

"An act styled the uniform act, regulating the operation of vehicles on highways; defining certain terms used in this act; defining the rules of the road for motor and other vehicles and the drivers thereof while traveling on any highway: providing for the size, construction and equipment of vehicles which may travel upon the highways; defining and regulating the lighting equipment, brakes and other vehicle devices on motor vehicles and other vehicles while traveling on the public highways; providing that certain acts defined herein shall be unlawful, and prescribing penalties for such violations: Making uniform the laws relating to the operation of vehicles on highways; *Repealing Chapter 177 of the 1925 Session Laws, Chapter 249 of the 1921 Session Laws, and Sections 1615, 1616 and 1618 of the Compiled Statutes*: and otherwise regulating the operation of vehicles on highways and the use of such highways, and prescribing the time when this act shall take effect." [Emphasis ours.]

Sec. 67 of the 1927 Act provided that:

"Section 1613, amended by Chap. 177 of 1925 Session Laws, [which provided for the registration of motor ve-

hicles] and Chap. 249 of the 1921 Session Laws, and Secs. 1615, 1616, and 1618 of the Compiled Statutes *are hereby repealed.*" [Emphasis ours.]

In support of his contention that the above-quoted instruction was erroneous, appellant argues "the last enactment [referring to the 1927 statute] was designed and intended to cover *the whole subject-matter of motor vehicles and the use of highways thereby, and the rules of the road applicable thereto.* Obviously, if the Uniform Code is to be adopted regulating all such relations then matters amendatory of Chap. 249, S. L. 1921, would have to fall by the repeal of such original [referring to the 1921 statute] enactment * * *. At the outset appellant admits that no case has been found 'on all fours' with the principles therein urged other than the leading case of *Blake v. Brackett*, 47 Me. 28."

. The facts in *Blake v. Brackett*, supra, briefly stated, were that Blake recovered judgment against Brackett; that execution issued and Brackett, the debtor, was arrested and then gave a poor debtor's bond; that upon notice to his creditor, the debtor selected one Cummings as one of the justices to hear his disclosure, and creditor Brackett selected one Herrin as the other; that the debtor objected to Herrin acting, on the ground he did not live in the place where the disclosure was made, nor in an adjoining town, and refused to submit himself to examination unless another justice was selected in place of Herrin; that another justice was then selected by a duly authorized officer; that these two justices then examined the debtor and gave him a certificate of discharge. The question presented for decision was as to whether the law, at the time of the disclosure, required that the two justices should reside in the town, or in an adjacent town. If it did not, then "the exigency had not arisen authorizing the officer to appoint one of the justices. If it did thus require a residence, the appointment was legal." The decision of that question, the court said, depended "upon the construction of the second section of the Act of March 13, 1856, chap. 213; which repeals sec. 46 of chap. 148, of the Revised Statutes, and chap. 88 of the public laws of the year eighteen hundred and forty-five."

It appeared that under sec. 46 of the 148th chap. of the Revised Statutes of 1841, residence in the town or in an adjoining town, was not required; that by an Act of

February 23, 1844, sec. 46 was amended by the insertion of a provision requiring such residence; that instead of repealing sec. 46, and then framing and enacting an identical section adding only the requirement of residence, the 1844 legislature amended the section by inserting, the court states, "certain words in certain places"; that later, in 1856 [before the Blake-Brackett controversy arose], said sec. 46 was repealed. Under these circumstances it was pointed out that:

"If we hold that the 46th section, as it stands in the printed volume, is entirely repealed, and the new matter in chap. 88, of 1844, is unrepealed, we shall have only disjointed parts of sentences remaining, without anything in sense or syntax to support them. This can not have been intended."

The court then held, pursuant to what it concluded was the intention of the Maine legislature, that the repeal of sec. 46 of the Revised Statutes of 1841 by the Act of 1856 effected the repeal of the amendment of 1844.

In *Blake v. Brackett,* supra, the question presented to the Maine Court was whether the Maine legislature of 1856 intended to repeal the amendment of 1844. The question in the case at bar is identical, that is to say, whether the 1927 Idaho legislature intended to repeal subd. 26 of sec. 1, supra. In determining that question, we must be guided by the fundamental and universal rule that legislative intent is the main lodestar of construction. [*Northern Pac. Ry. Co. v. Shoshone County et al,* 63 Ida. 36, 116 P. (2d) 221, 222.]

It will have been observed the 1927 Idaho legislature, by sec. 67 [the repealing section] expressly enumerated sec. 1613, as amended by chap. 177 of 1925 S. L.; chap. 249 of the 1921 S. L.; and secs. 1615, 1616, and 1618 of the Compiled Statutes. The express enumeration of the above sections and chapters indicates the legislature must have rather fully informed itself concerning existing motor vehicle legislation, and with that information before it, determined exactly what legislation it would repeal. Had the legislature intended to repeal subd. 26, supra, it seems fair to assume it would have included that subdivision in its enumeration.

Furthermore, "It is a universally recognized rule that where a constitution or statute specifies certain things, the designation of such things excludes all others." [*Peck v.*

*State,* 63 Ida. 375, 120 P. (2d) 820, 822; *Drainage Dist. No. 2 v. Ada County,* 38 Ida. 778, 786, 226 Pac. 290; *People v. Goldman,* 1 Ida. 714.]

The purpose the 1925 legislature had in mind by the enactment of subd. 26, supra, was to make the highways traveled by school busses safe for children—to protect school children from both injury and death. And the general purpose of the 1927 legislation was to make our highways safe for motor vehicle travelers. Therefore, sec. 26, supra, is not in conflict with the 1927 Act—instead, it is in complete harmony therewith. A subsequent statute does not repeal an earlier one by implication unless they are irreconcilable and inconsistent, and there is no other reasonable construction. [*State v. Martinez,* 43 Ida. 180, 187, 250 Pac. 239; *Brady v. Place,* 41 Ida. 747, 750, 242 Pac. 314.]

It follows from what has been said the order granting a new trial must be affirmed, and it is so ordered, with costs to respondent.

Givens, C.J. and Budge, Ailshie, JJ. and Sutton, D.J., concur.