426 P.2d 209

**CASSIA CREEK RESERVOIR CO., Inc., an Idaho Corporation, Plaintiff-Respondent,**

**v.**

**R. J. HARPER, Defendant-Appellant.**

No. 9844.

Supreme Court of Idaho.

April 11, 1967.

Duffin & Duff, Rupert, for appellant.

Herman E. Bedke, Burley, for respondent.

SMITH, Justice.

The issues presented on this appeal are, first, whether the district court properly granted a new trial upon motion by respondent, hereinafter sometimes referred to as the corporation; and second, whether the trial court correctly ruled on appellant's motion that one-half of the recovery (½ of $833.33) sought by the corporation was barred by the statute of limitations. Following is a recitation of the pertinent facts.

Respondent is an Idaho corporation formed for the purpose of constructing and operating dams and water reservoirs in Cassia Creek Valley. The articles of incorporation name appellant Harper as an incorporator and a member of the corporation's board of directors.

Respondent brought this action against Harper seeking to collect $816.33 owing under a capital stock subscription contract which he executed September 18, 1956. Under such agreement Harper contracted to purchase 250 shares of the corporation's capital stock at $5.00 a share, totaling $1,-250.00. He paid $416.67 in cash upon execution of the subscription contract, and agreed to pay the balance of $833.33, by payment of not less than one-half thereof together with interest, within one year, and the remainder together with interest, within two years.

At the trial Harper contended that the subscription contract could not be enforced for the reason that the corporation's activities, subsequent to the execution of the contract, constituted a failure of consideration.

The first alleged failure of consideration, Harper contended, occurred when the corporation revised its plans for reservoir construction so as to enlarge its water storage capacity, which effected substantial increases in costs of construction. The evidence adduced at the trial shows that, in 1957, the corporation envisioned a project with 7,000 acre-feet capacity, at an estimated cost of $604,000. By 1961, the project had grown to 12,200 acre-feet in storage capacity, at an estimated cost of $2,829,000.

The second alleged failure of consideration concerned the corporation's alleged interference with its stockholders' water rights. Harper testified that the corporation, through its attorney, represented to prospective stockholders that the reservoir project would in no way restrict decreed water rights in Cassia Creek. Those rights, under a federal court decree, provided for an irrigation season extending from April 1 to November 1 each year. Harper further testified that he would not have subscribed for stock without this assurance from the corporation. To establish the corporation's alleged interference with existing water rights, Harper introduced in evidence a blank form entitled "Water Distribution Agreement"; under the terms thereof, the owners of decreed water rights contracted with the corporation "to limit the use of water under the decreed rights * * * to the amount which can be beneficially used." An accompanying guide to determine beneficial use provided for a restricted May to September irrigation season. This clause concludes: " * * * in no way does this schedule or agreement impair such existing decreed natural flow rights."

After the parties concluded their presentation of evidence the district court submitted the cause to the jury upon forms of special verdicts. Since the forms of verdicts given the jury involved mixed

questions of law and fact, the court gave general instructions, "concerning the matter thus submitted, * * * necessary to enable the jury to make its findings upon each issue." I.R.C.P. 49(a). The special forms of verdicts requested the jury to find in essence: (1) whether there was a failure of consideration on the part of the corporation by departure from corporate purpose regarding size, scope, and cost of the project; (2) whether there was a failure of consideration by reason of a change affecting the shareholders' water rights; and (3) whether the corporation failed to perform any condition precedent regarding subscriptions of capital stock in the corporation.

The jury retired to consider these verdicts, met with some difficulty in understanding the questions posed, and returned to the courtroom for advice. The foreman informed the district judge that the jurors could not determine how their answers would affect the parties. The judge responded:

> "You have two alternatives. You either find that there was a failure of consideration which has not been waived, and if you find that, then the contract can't be enforced against Mr. Harper, or you find that there is no failure of consideration or if there is a failure it has been waived, then the contract can be enforced against Mr. Harper. Now, the order is the same on the other verdict concerning failure of consideration. The order is reversed on the one verdict concerning subscription of the capital stock."

The jury again retired and answered the three special verdicts. The first two, relating to failure of consideration, by departure from purpose and interference with water rights, the jury decided in favor of Harper, and the third, regarding subscription for shares, in favor of the corporation.

The district court entered judgment for Harper under these verdicts, whereupon the corporation moved the court for a new trial. The district court granted the motion on the grounds: (1) the court's informing the jury of the effect on the parties of their answers to the special verdicts deprived the corporation of a fair trial; (2) the verdict on water rights should not have been submitted to the jury; and (3) the jury's answer to the water rights verdict was not supported by the evidence. On this appeal, Harper contends that the trial court's order granting a new trial should be reversed

The trial court is vested with broad discretion in the granting of a new trial; on appeal the trial court's determination will not be disturbed unless there has been a manifest abuse of such discretion. Kuhn v. Dell, 89 Idaho 250, 404 P.2d 357 (1965); Sanchotena v. Tower Co., 74 Idaho 541, 264 P.2d 1021 (1953); Poston v. Hollar, 64 Idaho 322, 132 P.2d 142 (1942); Say v. Hodgin, 20 Idaho 64, 116 Pac. 410 (1911). Moreover, where the trial court enumerates various grounds for the granting of a motion for new trial, the order will be sustained if any one of the various grounds justified the granting of the motion. Poston v. Hollar, supra; MacDonald v. Ogan, 61 Idaho 553, 104 P.2d 1106 (1940); Egbert v. Twin Falls Canal Co., 52 Idaho 39, 11 P.2d 360 (1932).

The trial court properly exercised its judicial discretion in granting a new trial on the ground of improper instructions to the jury regarding the effect on the parties of their answers to the special verdicts. The purpose of submitting special verdicts rather than requesting a general verdict is to direct the jury to make their findings without regard to the effect of the answers upon the parties to the action. The brevity and clearness of the direct question focuses the jury's attention upon the essential issues and away from prejudice or favor. Informing the jury, either directly or indirectly, concerning whom their answers will favor, negates those advantages of the special verdict. See McCormick, Jury Verdicts Upon Special Questions, 2 F.R.D.

176 (1941); Nordbye, Use of Special Verdicts, 2 F.R.D. 138 (1941); Special Verdicts, 74 Yale L.J. 483 (1965). The district court in its discretion could therefore conclude that its instruction was prejudicial to the corporation and deprived it of a fair trial.

In some jurisdictions, it is reversible error for the trial court in its instructions to inform the jury expressly or by necessary implication of the effect of their answer to a special verdict upon the ultimate rights of either party. See Taylor v. Davarn, 191 Mich. 243, 157 N.W. 572 (1916); McCourtie v. United States Steel Corp., 253 Minn. 501, 93 N.W.2d 552 (1958); Continental Oil Co. v. Barnes, 97 S.W.2d 494 (Tex.Civ.App.1936); Pecor v. Home Indemnity Co. of New York, 234 Wis. 407, 291 N.W. 313 (1940). The federal courts have declined to follow such a rigid rule. See Lowery v. Clouse, 348 F.2d 252 (8th Cir. 1965); L'Urbaine et la Seine v. Rodriguez, 268 F.2d 1 (5th Cir. 1959); Thedorf v. Lipsey, 237 F.2d 190 (7th Cir. 1956); Bergstrom Paper Co. v. Continental Ins. Co., 75 F.Supp. 424 (E.D.Wis.1948); 2B Barron & Holtzoff, Federal Practice & Procedure § 1056 (Rev.ed. 1961).

■ On this appeal, however, we are not called upon to determine whether a trial court commits reversible error by instructing the jury as to the legal effect of their answer upon the parties to the action. Suffice it to say that the trial court in its discretion could determine that, under the circumstances of the instant case, the instruction resulted in a denial of substantial justice. Lowery v. Clouse, supra; 2B Barron & Holtzoff, Federal Practice & Procedure § 1056.1 (Rev.ed. 1961). The trial court, therefore, did not err in granting the motion for a new trial. R 10–602; I.R.C.P. 59(a).

The remaining grounds upon which the trial court granted respondent's motion for new trial need not be reviewed, except as to whether the court correctly submitted the special verdict on water rights to the jury.

On a new trial, since such issue could arise, it can best be decided at this time. I. C. § 1–205.

■ The trial court submitted a special verdict to the jury inquiring whether a failure of consideration occurred by reason of a change affecting the water rights of the shareholders. The jury was permitted to consider the evidence, particularly the aforementioned Water Distribution Agreement, without instruction by the trial court as to the legal effect of the instrument. This was error.

■ As a general rule, the construction of a written instrument, drawn in language such as not to require the aid of extrinsic evidence, is a question of law for the court, and it is error to submit such question to the jury. It follows that the trial court was obliged to instruct the jury as to the terms and legal effect of the Water Distribution Agreement. Jones v. Morrison, 24 Ariz. 367, 210 P. 472 (1922); Pray v. Kidd Williams Drilling Corp., 352 P.2d 380 (Okl. 1960); Littlefield Loan & Investment Co. v. Walkley & Chambers, 65 Okl. 246, 166 P. 90 (1917); Accord, West v. Brenner, 88 Idaho 44, 396 P.2d 115 (1964).

In the course of trial, appellant Harper moved for a partial summary judgment, pursuant to I.R.C.P. 56(b), on the ground that one-half of the amount which the corporation sought to recover was barred by the five-year statute of limitations, I.C. § 5–216. The district court granted Harper's motion and entered a judgment accordingly. The corporation cross-appealed.

The corporation, on September 5, 1963, commenced its action to collect the payments owing under the capital stock subscription contract which Harper executed on September 18, 1956. Under the contract, Harper agreed to pay $1,250.00 for the subscribed capital stock, and he made the initial payment of $416.67. The agreement provided that the subscriber should pay:

" * * * the balance thereof in the sum of $833.33 together with interest thereon * * * not less than one-half thereof.

together with the interest then due, within one year after date of this agreement and the remainder thereof, together with the interest then due, two years after the date of this agreement.

"This subscription is made on the express understanding that no certificate for the shares hereby subscribed shall be issued by the corporation until the total amount of the subscription price together with the interest thereon * * * shall have been fully paid * * *."

■ The language of the agreement clearly states that Harper was obligated to pay an installment equal to one-half of the balance due, or $416.67, with interest, not later than September 18, 1957. When he failed to pay any amount on that date, a cause of action for that installment accrued in favor of the corporation.

■ Where money is payable in installments, the statute of limitations begins to run against a cause of action for the recovery of a delinquent installment as of the time it becomes due. Bank of America v. McLaughlin, 152 Cal.App.2d Supp. 911, 313 P.2d 220 (1957); Lee v. DeForest, 22 Cal. App.2d 351, 71 P.2d 285 (1937); American Mutual Bldg. & Loan Co. v. Kesler, 64 Idaho 799, 137 P.2d 960 (1943). Consequently, the five-year statute of limitations had barred the corporation's action for recovery of the 1957 installment as of the time the corporation commenced its action against Harper.

■ The corporation's contention that Harper, by his conduct as a shareholder, acknowledged his obligation under the agreement must be rejected, since such conduct did not include execution of a writing signed by the debtor nor any partial payment of the principal or interest. I.C. § 5–238.

The judgment is affirmed. Costs to respondent.

TAYLOR, C. J., and McQUADE, McFADDEN and SPEAR, JJ., concur.