579 P.2d 683

David SEPPI and Rosa Seppi, husband and wife, Plaintiffs-Respondents,

v.

Lester R. BETTY and Mountain States Telephone & Telegraph Company, a corporation, Defendants-Appellants.

No. 12322.

Supreme Court of Idaho.

May 19, 1978.

Gary T. Dance, of Merrill & Merrill, Chtd., Pocatello, for defendants-appellants.

Don Burnett, of Burnett, Woodland & Hawkes, Pocatello, for plaintiffs-respondents.

BAKES, Justice.

This is a personal injury action arising from an auto-pedestrian accident in Lava Hot Springs, Idaho, in 1974. The jury returned a special verdict finding plaintiff respondent David Seppi, the injured pedestrian, and defendant appellant Lester R. Betty, the driver of the vehicle, equally negligent. The district court subsequently granted the respondents' motion for new trial and the appellants brought this appeal from that order. We affirm.

Appellant Betty, an employee of appellant Mountain States Telephone and Telegraph Company, parked a company van in an offstreet parking lot near the Silver Grill Cafe in Lava Hot Springs and entered the cafe. The entrance to this parking lot crossed a city sidewalk. Upon returning from the cafe, Betty picked up safety cones at the front and rear of the van. After entering the van he checked to the rear using the rear view mirrors. The rear window was partially obscured by cargo. He then backed the van out of the parking lot, across the sidewalk and into the street at 2 or 3 miles per hour. The rear of the van struck 83 year old David Seppi as he was walking on the sidewalk. Betty testified that he did not see Seppi until after the accident and did not realize he had struck him until a bystander shouted. Seppi was aware that the driveway to the parking lot crossed the sidewalk, and just prior to the accident he noticed some vehicles in the parking lot but none which were moving. The van had been parked in the corner of the lot next to the sidewalk. Seppi had to walk past the van just prior to turning the corner and crossing the parking lot entrance where he was struck. He stated that he did not hear the van start or see the van in motion until it struck him. The van knocked Seppi to the ground and dragged him a few feet. Seppi was injured and was hospitalized for seventeen days.

The respondents, David Seppi and his wife, brought this action for special damages for medical expenses and general damages for pain and disability suffered by Mr. Seppi, and general damages for mental anguish and loss of consortium suffered by Mrs. Seppi. The facts were generally not disputed at the trial, although witnesses differed whether Mr. Seppi had suffered a permanent neck injury as a result of the accident. The parties stipulated that the special damages incurred by the respondents were $2,330.40.

Following a trial, the jury returned a special verdict finding respondent Seppi guilty of 50% of the negligence that caused the accident and appellant Betty guilty of the other 50%, and finding the respondents' damages to be $2,330.40. The respondents moved for a judgment n. o. v. or in the

188

alternative a new trial. The district court denied the motion for a judgment n. o. v., but granted the motion for a new trial, stating:

"The issues raised have been of some moment to this Court. This Court has consistently been reluctant, after having submitted factual questions to a jury, to exercise its power of intervention. In this particular case the Court has reviewed its notes as to the facts; has reviewed respective counsel's recitation of their recollection of the facts and the Court has gone over the Instructions it gave the jury several times and has concluded that the Instructions, when read separately, state the law of the case, but it is possible that when read collectively the jury could have been misled as to the effect of any negligence of plaintiff. As reluctant as this Court is to intervene in a jury verdict, I cannot feel that under the facts and the law that the jury was justified in finding plaintiff guilty of 50% negligence and while the Court is, in effect, substituting its discretion for that of the jury, I will not substitute it to the extent of granting a Judgment Notwithstanding the Verdict."

■ Under our comparative negligence statute, a contributorily negligent plaintiff is not barred from recovering damages from a negligent defendant provided the plaintiff's negligence is "not as great as" the defendant's negligence. Also, the plaintiff's damages, if not barred, are reduced by the percentage of the total negligence attributable to·the plaintiff. I.C. §§ 6–801 and –802.[1] Accordingly, a jury finding that 50% of the negligence was attributable to the plaintiff would preclude any recovery

by the plaintiff. The appellants have appealed from the order granting the motion for a new trial, arguing that it constitutes an unwarranted invasion of the province of the jury and an abuse of the trial court's discretion.

I

■ We have frequently recognized that because of its proximity to the parties and issues the trial court is given broad discretion in ruling on motions for a new trial and that the exercise of that discretion will not be disturbed by this Court on appeal unless it clearly appears to have been manifestly abused. *See, e. g., Klundt v. Carothers*, 96 Idaho 782, 537 P.2d 62 (1975); *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 518 P.2d 1194 (1974); *Dawson v. Olson*, 95 Idaho 295, 507 P.2d 804 (1973); *Banz v. Jordon Motor Co.*, 94 Idaho 369, 487 P.2d 1123 (1971); *Rosenberg v. Toetly*, 93 Idaho 135, 456 P.2d 779 (1969); *Blaine v. Byers*, 91 Idaho 665, 429 P.2d 397 (1967); *Grimm v. Harper*, 84 Idaho 220, 370 P.2d 197 (1962); *Coast Transport, Inc. v. Stone*, 79 Idaho 257, 313 P.2d 1073 (1957); *Sanchotena v. Tower Co.*, 74 Idaho 541, 264 P.2d 1021 (1953); *Davis v. Rogers*, 72 Idaho 33, 236 P.2d 1006 (1951); *Checketts v. Bowman*, 70 Idaho 463, 220 P.2d 682 (1950); *Hall v. Johnson*, 70 Idaho 190, 214 P.2d 467 (1950); *MacDonald v. Ogan*, 61 Idaho 553, 104 P.2d 1106 (1940); *Seamons v. Davis*, 34 Idaho 393, 201 P. 716 (1921); *Wolfe v. Ridley*, 17 Idaho 173, 104 P. 1014 (1909). *Accord*, 11 C. Wright & A. Miller, Federal Practice and Procedure, Civil § 2806 (1973); 6A Moore's Federal Practice, para. 59.08[5] (2d ed. 1974); M. Green, Basic Civil Procedure 187 (1972); 58 Am. Jur.2d *New Trial* § 139 (1971). We recently

---

1. "[I.C.] 6–801 Comparative Negligence—Effect Of Contributory Negligence—Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence or gross negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence or gross negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering."

"[I.C.] 6–802 Verdict Giving Percentage Of Negligence Attributable To Each Party—The court may, and when requested by any party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of negligence attributable to each party; and the court shall then reduce the amount of such damages in proportion to the amount of negligence attributable to the person recovering."

reaffirmed this rule in *Smith v. Great Basin Grain Co.*, 98 Idaho 266, 561 P.2d 1299 (1977), where we stated:

> "The trial court is entrusted with a sound judicial discretion to be exercised in granting or refusing to grant a new trial. The exercise of that discretion will not be disturbed on appeal unless it clearly appears to have been manifestly abused. [Citations omitted]. . . . The more liberal rule applied to orders granting a new trial recognizes the advantage enjoyed by the trial court in reviewing the case because of the court's active participation in the trial. [Citation omitted]." *Id.* at 275–276, 561 P.2d at 1308–1309.

In *Warren v. Eshelman*, 88 Idaho 496, 401 P.2d 539 (1965), we reviewed the basis of the rule:

> "When a trial court is of the opinion that a verdict, based on conflicting evidence, or even where there is no conflict, is not in accord with law or justice, he may grant a new trial. [Citation omitted]. The reasons for such rule are recognized as being, (1) that the trial court, from seeing and hearing the witness, may have formed such a doubt as to the credibility of the testimony, or entertained such an impression from the surrounding circumstances and atmosphere of the trial, as to conclude that a fair and impartial trial was not had; and (2) that the exercise of such power is not an invasion of the jury's function to decide the facts, for upon granting a new trial the questions of fact will again be submitted to the jury for a decision." *Id.* at 500, 401 P.2d at 541.

▮ In this case the trial judge, after carefully reviewing the facts presented to the jury and recognizing that he was "in effect, substituting [his] discretion for that of the jury," nevertheless concluded that the jury was not "justified in finding the plaintiff guilty of 50% negligence" and ordered a new trial. The trial court's decision appears to be a careful, restrained and conscientious exercise of the broad discretion entrusted to it in ruling on such matters. We affirm its decision.

▮ The appellants have argued that our decision in *Ryals v. Broadbent*, 98 Idaho 392, 565 P.2d 982 (1977), requires a reversal of the trial court's decision in this case. However, we do not believe that the plurality opinion in *Ryals*, in which only two members of the Court concurred, is controlling authority in this case. The *Ryals* plurality opinion suggested that where a jury returns a special verdict on the issues of negligence and proximate cause the trial court's authority to grant a new trial is limited to the narrow standard enunciated in *National Produce Distributors v. Grube*, 78 Idaho 33, 297 P.2d 284 (1956), and the dissenting opinion in *Deshazer v. Tompkins*, 93 Idaho 267, 460 P.2d 402 (1969) (Shepard, J., dissenting). We now see no reason why special verdicts should be treated differently than general verdicts, and we reaffirm the rule which this Court first approved as early as *Jacksha v. Gilbert*, 4 Idaho 738, 44 P. 555 (1896), and as recently as *Everton v. Blair*, 99 Idaho 14, 576 P.2d 585 (1978), that:

> "The trial court is vested with broad discretion in granting a new trial. On appeal, the determination of the trial court will not be overturned absent a manifest abuse of discretion." *Id.,* at 15, 576 P.2d at 586.

The appellants also urge that any new trial should be limited solely to the issue of liability. It is clear that the trial court intended that there be a new trial of both the issues of liability and damages, and we affirm that decision.

## II

The respondents have also requested that we direct the trial court to give an explanatory instruction to the jury at the new trial on the use of the special verdict form stating: (1) that their finding on the amount of damages should not reflect any deductions or adjustments based on their answers to other questions in the special verdict form, and (2) that a finding of 50% negligence on the part of the respondents would result in no recovery by the plaintiffs. At trial the plaintiffs requested an instruction which would have advised the jury not to adjust

the determination of damages to reflect their answers to other questions. However, the district court refused the requested instruction and in Instruction No. 19 told the jury only that if they answered the question on the special verdict form concerning damages they "must fix the amount of money which would reasonably and fairly compensate the plaintiffs, David and Rosa Seppi, for any of the damages proved by the evidence to have proximately resulted from the negligence of the defendants."[2] The plaintiffs did not request an instruction stating that the plaintiffs would recover nothing if the jury found the plaintiffs' percentage of negligence to be 50% or more. The special verdict form submitted to the jury, to which the plaintiffs did not object, instructed the jury to find "the total amount of damages sustained by both of the plaintiffs, David and Rosa Seppi, as a result of the accident" unless they found that the defendant was not guilty of any negligence.[3]

Instruction No. 19 and the special verdict form submitted to the jury were conflicting. The court's instruction told the jury to determine "the damages proved by the evidence to have proximately resulted from the negligence of the defendants." The special verdict form, however, asked the jury to determine "the total amount of damages sustained by both plaintiffs . . . as a result of the accident." Thus, the court's instruction in effect told the jury to apportion the negligence between the defendants and the plaintiffs and to fix only those damages resulting from the defendants' negligence. In contrast, the special verdict form asked the jury to determine plaintiffs' total damages which resulted from the accident regardless of whether they resulted from the plaintiffs' or the defendants' negligence. This conflict in the directives given to the jury and the instruction which the plaintiffs have asked this Court to direct the trial court to give at the new trial raise important issues concerning the extent to which a jury should be informed of the effect of their answers to questions in a special verdict form on the eventual outcome of a comparative negligence case. Although in previous cases we have referred to the general rule against informing the jury of the legal effect of their answers, our prior decisions have not been entirely consistent and we have not previously considered the precise issues raised in this case.

In *Holland v. Peterson*, 95 Idaho 728, 518 P.2d 1190 (1974), we stated, in disposing of an argument that the trial court had erred in instructing the jury that they should not consider whether their answers to certain

2. Instruction No. 19 states in part: "In a moment, I will instruct you about the use of a special verdict form. The form contains a question on damages which you may be required to answer. If you answer this question, you must fix the amount of money which will reasonably and fairly compensate the Plaintiffs, David and Rosa Seppi, for any of the damages proved by the evidence to have proximately resulted from the negligence of the Defendants."

3. The questions submitted to the jury in the special verdict form were:

"QUESTION NO. 1. Were the Defendants Mountain States Telephone and Lester Betty guilty of negligence which was a proximate cause of the accident? Answer: Yes _____ No _____.

"If you have answered the above question 'Yes' then please answer Question No. 2. If you have answered the above question 'No' then you will not answer the remaining questions but will simply sign the verdict.

"QUESTION NO. 2. Was the Plaintiff David Seppi guilty of negligence which was a proximate cause of the accident? Answer: Yes _____ No _____.

"If you have answered 'No' to Question 2, then you will not answer Question No. 3 but will next answer Question No. 4. If you have answered 'Yes' to both of the questions above (Question No. 1 and Question No. 2), then you will answer Question No. 3.

"QUESTION NO. 3. Considering all the negligence that caused the accident at one hundred percent, what percentage is attributable to:
  (a) Plaintiff David Seppi                        _____%
  (b) Defendants Mountain States
       Telephone and Lester Betty          _____%
                                     Total          _____%

"QUESTION NO. 4. What is the total amount of damages sustained by both of the Plaintiffs, David and Rosa Seppi, as a result of the accident? Answer: $_____."

interrogatories would be favorable to one party or another, that:

"Appellant's final assignment of error is that the trial court erred in instructing the jury that they should not concern themselves with whether their answers to the interrogatories submitted to them would be favorable to one party or another. The general rule, and the one we adopt today, is that it is reversible error for the trial court to instruct the jury as to what the effect their answers will have on the final outcome of the case. *See* Annot. 90 A.L.R.2d 1041 (1963). Of course, it may not always be possible to frame the interrogatories in language that won't tend to inform the jury of the effect, but they should never be instructed what it will be. *See Ellis v. Ashton & St. Anthony Power Co.*, 41 Idaho 106, 238 P. 517 (1925)." *Id.* at 732, 518 P.2d at 1194.

In *Cassia Creek Reservoir Co. v. Harper*, 91 Idaho 488, 426 P.2d 209 (1967), we had occasion to discuss the basis of the rule against informing juries of the effect of their answers in special verdicts upon the final outcome of the case:

"The purpose of submitting special verdicts rather than requesting a general verdict is to direct the jury to make their findings without regard to the effect of the answers upon the parties to the action. The brevity and clearness of the direct question focuses the jury's attention upon the essential issues and away from prejudice or favor. Informing the jury, either directly or indirectly, concerning whom their answers will favor, negates those advantages of the special verdict. [Citations omitted]. The district court in its discretion could therefore conclude that its instruction was prejudicial to the corporation and deprived it of a fair trial.

"In some jurisdictions, it is reversible error for the trial court in its instructions to inform the jury expressly or by necessary implication of the effect of their answer to a special verdict upon the ultimate rights of either party. [Citations omitted]." *Id.* at 490–491, 426 P.2d at 211–212.

However, in *Harper* we did not reach the issue whether it was reversible error to instruct the jury on the legal effect of their answers, but we ruled only that under the circumstances of that case the trial court had not abused its discretion in ordering a new trial.

In *Anderson v. Gailey*, 97 Idaho 813, 555 P.2d 144 (1976), we ruled:

"The plaintiffs argued that the trial court erred by failing to give the jury instructions explaining the use of the special verdict form. We agree. The trial court should have instructed the jury by reading the special verdict to the jury and explaining it to the jury. *See e. g.*, IDJI 280–281." *Id.* at 823, 555 P.2d at 154.

The example instruction and special verdict form referred to in *Anderson*, Idaho Pattern Jury Instructions (IDJI) 280 through 281.1, indirectly inform the jury of the effect of their findings on the percentage of negligence by instructing the jury not to answer the question concerning damages if they had found in answering a prior question that the plaintiff's negligence was 50% or more.

We believe, for reasons outlined below, that the general rule against informing the jury of the effect of their answers in a special verdict when applied to the particular version of comparative negligence in this state presents a unique set of issues, not clearly raised or fully considered in our prior decisions. We therefore consider this issue as one of first impression.

As we noted in *Harper* a number of courts have ruled that it is reversible error to inform the jury of the effect their findings on the percentage of negligence will have on the ultimate outcome of the case. 91 Idaho at 491, 426 P.2d at 212. *See Avery v. Wadlington*, 186 Colo. 158, 526 P.2d 295 (1974); *McGinn v. Utah Power & Light Co.*, 529 P.2d 423 (Utah 1974) (applying I.C. § 6–801). The basis for the rule is that "[t]he controlling thought behind the special verdict 'is to free the jury from any procedure which would inject the feeling of

partisanship in their minds, and limit the deliberations to the specific fact question submitted.'" *McCourtie v. United States Steel Corp.*, 253 Minn. 501, 93 N.W.2d 552, 563 (1958). To inform the jury of the effect of their answers, these courts have reasoned, would undermine the very purpose of the special verdict. This rule, however, has not been without strong critics. *See, e. g.,* Brown, Federal Special Verdicts: The Doubt Eliminator, 44 F.R.D. 338 (1968); Wright, The Use of Special Verdicts in Federal Court, 38 F.R.D. 199 (1965); Green, Blindfolding the Jury, 33 Tex.L.Rev. 273 (1955).

It is doubtful whether special verdicts really do much to eliminate the effects of bias, sympathy and prejudice from jury deliberations and jury verdicts. For example, in *Harper,* even though the jury was given a special verdict form instructing them to answer specific factual questions, the jury encountered difficulty and returned to the courtroom wanting to know how their answers would affect the parties. In *Argo v. Blackshear,* 242 Ark. 817, 416 S.W.2d 314 (1967), a personal injury action involving a comparative negligence statute similar to Idaho's, the jury returned four interrogatories finding the parties equally negligent and fixing the plaintiff's total damages at $18,000. In response to an inquiry by the trial court, the jury foreman stated that it was the intent of all the jurors that the plaintiff recover $18,000. The trial court then ruled that the interrogatories had confused the jurors, resubmitted the case on a general verdict and permitted counsel to address the jury on the comparative negligence law. The jury reconvened and later returned a general verdict of $18,000 for the plaintiff. This judgment was reversed on appeal where it was ordered that the special verdict in favor of the defendant be entered.

In *Thedorf v. Lipsey,* 237 F.2d 190 (7th Cir. 1956) (applying Wisconsin law), the jury, after the issues had been submitted to it in special interrogatories, asked the trial court what the legal effect of a finding of equal negligence would be. The trial court refused to give the jury this information,

and its decision was affirmed on appeal. In *Porche v. Gulf Mississippi Marine Corp.,* 390 F.Supp. 624 (E.D.La.1975), a case applying the comparative negligence principles of admiralty law, the jury was given a general charge and special interrogatories. After deliberating for some time the jury sent a written question to the court asking whether the plaintiff would receive the total amount of damages they awarded or a portion thereof. In response the district court indicated that the sum would be reduced by the percentage of the plaintiff's contributory negligence. In its published decision the district court rejected the argument that the jury should not be informed of the legal consequences of their answers and ruled that the better rule is that juries are entitled to know the effects of their decisions.

"The jury is not to be set loose in a maze of factual questions, to be answered without intelligent awareness of the consequences. One of the purposes of the jury system is to temper the strict application of law to facts, and thus bring to the administration of justice a commonsense lay approach, a purpose ill-served by relegating the jury to a role of determining facts *in vacuo,* ignorant of the significance of their findings. See C. Wright, Law of Federal Courts § 94 (1970)." *Id.* at 632.

These various cases illustrate what trial lawyers and judges already know: jurors are concerned about the effect of their verdicts on the ultimate outcome of the case and the use of a special verdict or special interrogatories does not magically eliminate that well known trait of American juries.

Prominent jurists have differed on the value of the jury's tendency to return verdicts which effectuate what they believe to be the desired result, regardless of the legal instructions they have been given. The late Judge Jerome Frank argued that this characteristic of juries made the law as variable as the passions and prejudices of man. He called the juries "ad hoc ephemeral (unelected) legislatures" which make law from the jury box. *Skidmore v. Baltimore & O.*

*R. Co.*, 167 F.2d 54, 58–59 (2d Cir. 1948) (opinion of Frank, J.). However, Roscoe Pound called the jury the "great corrective of the law in its actual administration." Pound, Law in Books and Law in Action, 49 Am.L.Rev. 12, 18 (1910) (the pertinent passage is quoted in *Skidmore, supra* at 58, n. 13). Justice Holmes argued that the jury's "popular prejudice keeps the law in accord with the wishes of the community." O. Holmes, Collected Legal Papers 237–38 (1920). Irrespective of whether one considers it a virtue or a vice, the tendency of juries to adjust their verdicts to accord with their notions of the justice of the cause is an inherent characteristic of juries and will be with us as long as we continue to have juries. Simply giving a jury five or six questions to answer in a special verdict form rather than one in a general verdict does not erase the problem.

It would be incredibly naive to believe that jurors, after having listened attentively to testimony of the parties and a parade of witnesses and after having heard the arguments of counsel, will answer questions on a special verdict form without giving any thought to the effect those answers will have on the parties and to whether their answers will effectuate a result in accord with their own lay sense of justice. With respect to most questions, the jury would have to be extremely dullwitted not to be able to guess which answers favor which parties. In those instances where the legal effect of their answers is not so obvious, the jurors will nonetheless speculate, often incorrectly, and thus subvert the whole judicial process.

It is this latter problem, juries speculating on the effect of their answers, that creates a unique danger when the issues in a comparative negligence case in Idaho are submitted to a jury in a special verdict form. A jury uninformed about the precise working of the Idaho comparative negligence law, when presented with questions asking them to apportion the negligence between the parties and to fix the total amount of damages, is likely to assume that the plaintiff's recovery will be reduced in proportion to his negligence. In such situation the Idaho comparative negligence rule, which bars recovery if the plaintiff's negligence is 50% or more, poses a trap for the uninformed jury. The jury may become frustrated with the formidable task of determining as a matter of fact what percentage of the total negligence in the case is attributable to the various acts of the various parties and treat the question as one which requires them to determine how much of the plaintiff's damages the defendant should be responsible for. In the case where it is clear that both parties were negligent to some extent, a 50–50 allocation of negligence is singularly attractive to a jury, particularly in a highly contested case or one in which the jurors themselves are sharply divided. Consequently, a jury, not knowing the critical importance Idaho law places on a finding of 50% negligence, may reach such a verdict too quickly and without carefully examining the facts. The rule against informing the jury of the effect of a 50–50 allocation of negligence of course places the defense counsel in a position to exploit the sense of equity implicit in such a finding without the plaintiff's counsel being able to argue the critical legal import of such a determination. Thus, the uninformed jury could easily deceive itself into believing that it has decided that the defendant should pay for half of the plaintiff's damages when in fact it has determined that the plaintiff will recover nothing at all.

Contrast that situation to one in which the jury is composed of members at least some of whom have learned from prior jury experience or other sources how the comparative negligence law in Idaho actually operates. A reminder in the deliberations by one of the jurors that a finding of 50% negligence will result in no recovery by the plaintiff is likely to cause the jurors to examine the facts more closely before quickly coming to the appealing 50–50 allocation of negligence. Thus, it is not unlikely that in a number of cases whether the plaintiff recovers may depend as much upon how "courtwise" the members of the jury are as upon how the jurors view the

facts. In short, not informing the jury of the effect of a 50% negligence finding in many cases is likely to cause an unjust result and produce a judgment which does not reflect the wisdom of the jury or their view of the facts, but only their ignorance of Idaho law.

We believe the lessons learned by other jurisdictions which have for many years applied the rule against informing the jury of the effects of their answers support our decision. Minnesota, Texas and Wisconsin very early adopted the rule against informing the jury of the effects of their findings. *McCourtie v. United States Steel Corp.*, supra; *Grasso v. Cannon Ball Motor Freight Lines*, 125 Tex. 154, 81 S.W.2d 482 (1935); *Coats v. Town of Stanton*, 90 Wis. 130, 62 N.W. 619 (1895). The cases of these jurisdictions are frequently relied upon by other courts which have adopted that rule against informing the jury of the effect of a 50% negligence finding. *See, e. g., Avery v. Wadlington*, supra; *McGinn v. Utah Power & Light Co.*, supra. Indeed, the annotation to which we referred in *Holland* is largely composed of cases from those jurisdictions. *See* Annot., 90 A.L.R.2d 1040 (1963). The Minnesota court in *McCourtie* was one of the courts to speak most decisively in favor of the rule in 1958. Yet, the Minnesota Supreme Court recently amended Minnesota's civil procedure rules to direct the trial court to inform the jury of the effect of their answers to the percentage of negligence questions in a special verdict form and to permit counsel to comment thereon, unless the court determines that because of unresolved questions of law or complex issues such instructions and comments may be confusing and misleading to the jury. Minn.R.Civ.P. 49.01 (as amended Jan. 5, 1973).[4] Texas has also changed its rules so that an incidental comment on the effect of the jury's answers in an explanatory instruction is not objectionable. Tex.R.Civ.P. 277 (as amended Sept. 1, 1973).[5] Wisconsin, though not changing its rules to permit informing the jury of the legal effect of their answers, did adopt a "no greater than" comparative negligence statute in 1971 which permits recovery as long as the plaintiff's contributory negligence is not greater than the defendant's negligence. Wis.Stat. § 895.045 (1975). This statute gives the plaintiff the benefit of the attractive 50–50 apportionment of negligence. The prejudicial effects on the plaintiffs of the former statute, which was similar to Idaho's present statute, was a principal motive for the change. Fleming, The Supreme Court of California 1974–1975, Foreword: Comparative Negligence at Last—By Judicial Choice, 64 Cal.L.Rev. 239, 245, n. 25 (1976); Smith, Comparative Negligence Problems with the Special Verdict: Informing the Jury of the Legal Effects of Their Answers, 10 Land & Water L.Rev. 199, 223–224 (1975). Thus, these three jurisdictions whose early decisions formed the basis for the rule against informing juries of the legal effect of a 50% negligence finding have all since altered their rules in some respect. Also, Colorado, North Dakota and Wyoming, which have comparative negligence statutes similar to Idaho's statute, permit a jury to be informed of the effect

---

4. The pertinent portion of Minn.R.Civ.P. 49.01 provides:
   "Except as provided in Rule 49.01(2), neither the court nor counsel shall inform the jury of the effect of its answers on the outcome of the case.
   "(2) In actions involving Minn.Stat.1971, Sec. 604.01, the court shall inform the jury of the effect of its answers to the percentage of negligence question and shall permit counsel to comment thereon, unless the court is of the opinion that doubtful or unresolved questions of law, or complex issues of law or fact are involved, which may render such instruction or comment erroneous, misleading or confusing to the jury." *See* Note, Informing the Jury of the Effect of its Answers to Special Verdict Questions—The Minnesota Experience, 58 Minn.L.Rev. 903 (1974).

5. The amended Texas Rule 277 provides in pertinent part:
   "The court shall not in its charge comment directly on the weight of the evidence or advise the jury of the effect of their answers, but the court's charge shall not be objectionable on the ground that it incidentally constitutes a comment on the weight of the evidence or advises the jury of the effect of their answers where it is properly a part of an explanatory instruction or definition."

of their answers.[6] The lessons learned by these other jurisdictions, especially those which have had years of experience in applying the rule against informing the jury of the effect of their answers, seem fairly obvious.

■ In our decision today we hold that it is not reversible error for the court to inform the jury of the effect of apportioning 50% or more of the negligence to the plaintiff. Though we believe in most cases such an instruction is fully warranted, we conclude that the trial courts should be given discretion not to so inform the jury in those cases where the issues are so complex or the legal issues so uncertain that such instructions would confuse or mislead the jury. In light of this ruling, we also believe that the trial court should carefully instruct the jury that they are to determine the total damages and that they are not to reduce that sum to reflect their findings on the percentage of negligence.

■ We emphasize that our decision today does not authorize juries to totally disregard the law and to decide cases according to their own particular whims. Rather, we stress, as we have earlier in this opinion, that the trial court has broad discretion to order a new trial when it believes that the verdict, whether general or special, is a product of the jury's misunderstanding, prejudice or bias, or that the jury has failed to properly follow its instructions. This is a much more effective way to control the problems of misunderstanding and bias in jury verdicts than attempting to blindfold the jury. Moreover, we note that Idaho comparative negligence law is premised on the proposition that a plaintiff whose damages are as much the result of its own negligence as that of the defendant ought not to recover, but the parties should bear their own losses. The rule is based on a sound common-sense proposition which we do not believe will be lightly disregarded by juries in this state once it is properly explained to them.

Affirmed.

McFADDEN, DONALDSON and BISTLINE, JJ., and SCOGGIN, District Judge (Ret.), concur.

6. Colo.Rev.Stat. § 13–21–111(4) (Supp.1976) (added in 1975 after the Colorado Supreme Court's decision in *Avery v. Wadlington, su-* *pra*); N.D.Cent.Code § 9–10–07 (repl.vol. 1975); Wyo.Stat. § 1–1–109(b)(iii) (republished ed. 1977).