No. 89-311

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

JULIE DeCELLES,

 Plaintiff and Appellant,

-v-

STATE OF MONTANA, acting through
the Department of Highways; and
RAY ELDEN EDER, an individual,

 Defendants and Respondents.

FILED

JUL 11 1990

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the First Judicial District,
 In and for the County of Lewis and Clark,
 The Honorable Gordon Bennett Judge presiding.

COUNSEL OF RECORD:

 For Appellant:

 Ronald F. Waterman, argued; Gough, Shanahan, Johnson
 & Waterman; Helena, Montana

 Ron L. Lee, Flagstaff, Arizona

 For Respondent:

 John H. Maynard, Department of Administration,
 Helena, Montana

 Sherman V. Lohn & Steven S. Carey, argued;
 Garlington, Lohn & Robinson, Missoula, Montana

Submitted: April 6, 1990

Decided: July 11, 1990

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

The plaintiff Julie DeCelles appeals the order of Montana First Judicial District Court, Lewis and Clark County, denying her motion for new trial on the grounds that no prejudice resulted from the Court instructing the jury regarding the effects of joint and several liability. We affirm.

Appellant raises a sole issue on appeal: Did the District Court err in instructing the jury, over the objection of the plaintiff, regarding the consequences of joint and several liability as the law was applied to the facts of this case?

On November 17, 1984, Julie DeCelles was involved in an automobile accident on a stretch of U.S. Highway 87 between Roundup and Billings, Montana. At the time she was riding as a passenger in a 1965 El Camino owned by Rosita Kelley that also carried Rosita and Julie's brother and sister, Ray and Rosella Eder.

The evidence also indicated that Julie, Ray, and Rosita began drinking the morning of the day before the accident in Harlem, Montana, and continued drinking throughout the day. Later, they decided to drive to Havre to pick up sister Rosella. After arriving in Havre they went to a bar, played pool and continued to drink.

In Havre, the group then decided to travel south to Billings, via Roundup, Montana on U.S. Highway 87. In the early morning hours the El Camino crossed the center line and collided with a northbound vehicle. The accident rendered Julie DeCelles permanently blind, without her sense of smell, and with only a

2

minimal sense of taste. Although it was disputed, physical evidence of his injuries indicated that Ray Eder was driving the vehicle at the time of the accident.

On December 22, 1986, the plaintiff filed suit against Ray Eder as driver of the vehicle and the State of Montana for alleged negligence in maintaining the highway at the accident site. Defendant Eder failed to answer and the District Court subsequently entered his default on April 5, 1988.

During trial the plaintiff presented the testimony of expert Jack Talbott, a mechanical engineer, who stated that the highway at the accident site was deteriorated and contained undulations or ripples in its surface that could have contributed to the accident. The plaintiff also presented evidence that the State of Montana knew of the road's condition for several years and failed to repair it. This was contested by the State.

Over the plaintiff's objection, the District Court instructed the jury regarding the consequences of their verdict under the law of joint and several liability. Returning a verdict in accordance with comparative negligence law, the jury then apportioned fault among the parties finding the plaintiff 35% negligent, defendant Eder 65% negligent, and the State 0% negligent. The plaintiff moved for a new trial on the grounds that the instruction was an error of law which led to jury misconduct in arriving at a verdict. The District Court denied the motion. Plaintiff now appeals raising the aforementioned issue.

The plaintiff argues that because there was ample evidence in

the record to support the negligence of the State, the jury clearly disregarded this evidence and concluded that application of joint and several liability would be unfair to the State. Thus, plaintiff contends that the giving of Instruction No. 35 on joint and several liability prejudiced her case and constitutes reversible error. The instruction provided:

> Under the legal concept of joint and several liability if you find
> (a)  that defendant State of Montana was negligent,
> (b)  that negligence was a legal cause of Plaintiff's injuries, and
> (c)  plaintiff was 50% or less comparatively negligent, then defendant State of Montana may be responsible for paying the entire amount of Plaintiff's damages after reduction for plaintiff's comparative negligence.

See also § 27-1-703, MCA. The plaintiff argues that it was prejudicial error to give this instruction in this case because (1) it inappropriately injected information about the nonexistence of Ray Eder's insurance into jury deliberations and allowed defense counsel to allude to such nonexistence during closing argument; (2) it allowed the jury in effect to decide the justification for applying the joint and several rule which is properly a legislative function; and (3) it inappropriately allowed the jury to consider the post-judgment effect its finding regarding liability would have on each defendant.

We reject these arguments. The underlying thread running through these contentions is skepticism of the informed jury's ability to fairly perform its function in the decision-making process without yielding to passion or prejudice. The modern trend and better view among comparative negligence jurisdictions that

4

have considered the issues is to permit the jury to know the effect of its percentage findings. See, generally Ainsworth & Miller, Removing the Blindfold: General Verdicts and Letting the Jury Know the Effects of Its Answers, 29 S.Tex.L.Rev. 233, 237-238 (1987); Talenfeld, Instructing the Jury as to the Effect of Joint and Several Liability: Time for the Court to Address the Issue on the Merits, 20 Ariz.St.L.J. 925, 933 (1988). In Martel v. Montana Power Company (1988), 231 Mont. 96, 105, 752 P.2d 140, 146, we expressly held that such skepticism of a jury's ability to properly render its verdict in conformity with the law is unfounded:

> We think Montana juries can and should be trusted with the information about the consequences of their verdict. Other jurisdictions have considered this question and have come to differing conclusions. An excellent review of the holdings in those jurisdictions is set forth in the Idaho case of Seppi v. Betty (1978), 991 Idaho 186, 579 P.2d 683. After a lengthy discussion, the Idaho Supreme Court concluded that it is naive to believe that jurors do not speculate about the effect of their answers. To end speculation, the Idaho court said jurors should be informed of the effect of their answers. Seppi, 579 P.2d at 691. The Idaho court tempered its position by giving the trial court the discretion not to inform the jury in those cases where the issues are so complex or uncertain that the jury would only be confused. Seppi, 579 P.2d at 692.
> We adopt the reasoning of the Idaho Supreme Court and hold that under the circumstances of this case, the jury should have been informed of the effect of its verdict.

Both Martel and Seppi dealt with the question of informing the jury about the effect of modified comparative negligence law on the jury's verdict. The Idaho Supreme Court applied the principle of informing juries adopted in Seppi and later adopted by us in Martel to the same issue of joint and several liability presented

in this case in Luna v. Shockey Sheet Metal & Welding Co. (1987), 113 Idaho 193, 743 P.2d 61, 64:

> Similarly, the doctrine of joint and several liability, under which a defendant assessed a mere 1% negligence may be required to pay 100% of plaintiff's damages if, for some reason, the joint tort feasor is unreachable through the judicial process, "poses a trap for the uninformed jury." An informed jury will be much more likely to carefully examine the facts prior to reaching a verdict holding a defendant even 1% at fault, no matter how cosmetically appealing a partial allocation of fault might be.

In Luna the Idaho court followed the reasoning of Kaeo v. Davis (Hawaii 1986), 719 P.2d 387, which addressed the same issue of joint and several liability. The Hawaii Supreme Court, relying on the Idaho Court's holding in Seppi, determined that it was more desirable for the courts to explain the operation of the law to the jury than to perpetuate a system which encourages mistaken speculation by uninformed jurors. Luna, 743 P.2d at 64-65; Kaeo, 719 P.2d at 395-396. The holding in Kaeo was also based in part on the language of Rule 49(a), Haw.R.Civ.P., which is identical to language in the Montana rule, that "the court shall give to the jury such explanation and instruction concerning the matter . . . submitted as may be necessary to enable the jury to make its findings upon each issue." Rule 49(a), M.R.Civ.P. Following our reasoning in Martel, we therefore now adopt the reasoning of this line of cases and conclude that a jury should be instructed about the consequences of its verdict with respect to joint and several liability.

The State of Wyoming has also followed the reasoning in Seppi and applied the principle of informing the jury about the

6

consequences of its verdict to the concept of joint and several liability. See e.g. Coryell v. Town of Pinedale (Wyo.1987), 745 P.2d 883. Moreover, the Wyoming court has addressed the issue of whether it is proper for counsel to argue the effect of joint and several liability to the jury. See Seaton v. Wyoming Highway Commission (Wyo.1989), 784 P.2d 197. In Seaton as in the present case, the plaintiff was an injured passenger alleging negligence on the part of the driver and the Highway Department. The Wyoming Court held that unless counsel misstates the law regarding joint and several liability, counsel may properly comment on any instruction pertinent thereto given by the court. Seaton, 784 P.2d at 207, Harmon v. Town of Afton (Wyo.1987), 745 P.2d 889, 893.

Here, counsel for the Highway Department made the following argument in closing:

> Please do not put one percent for just any reason that may cross your mind.
> The judge read to you Instruction No. 35. A finding of one percent under Montana law, joint and several liability is a complete defeat for the State of Montana. A finding of one percent under instruction No. 35 would allow the entire amount severally to be collected from the State of Montana.
> Please do not put one percent or anything of that nature.
> Zero is what we're after and zero is what we must have.
>
> . . .
>
> Now the plaintiffs haven't asked you to find a percentage of negligence against the state but to be sure that you find it to be small because that would be realistic from their point of view.
> But the temptation is in many of these situations when somebody has worked so hard and are such fine attorneys, as these two gentlemen are, is to award them something for their effort.
> Don't do that.
> We can't make these decisions based on the sympathy or on the concerns for other people's efforts. We must

7

base them on the facts.

And that is why when you get that jury verdict form when you go through it we're going to ask you to fill in zero percent against the State. Because if you find that we're one percent or five percent negligent, we could be responsible for the entire award.

We reject the plaintiff's contention that this argument improperly injected the issue of the existence of defendant Eder's liability insurance into the case. We note that the word insurance never appears in the record. We follow the rule that absent a misstatement of the law, counsel may properly comment during his closing argument on any instruction given by the court. Seaton, 784 P.2d at 207; Harmon, 745 P.2d at 893.

Finally, while we find no prejudicial error in Instruction No. 35 as given by the District Court, in applicable cases we recommend that the jury be instructed on the effect of joint and several liability·on its verdict in the following manner:

Under the doctrine of joint and several liability, if the defendants are found to have proximately caused in any degree the injuries to the plaintiff, each such defendant is liable to the plaintiff for all of the plaintiff's damages for which all of such defendants are responsible, irrespective of the varying degrees of fault between the defendants in causing the injuries. The reason for this doctrine is that although the defendants may have been at fault in differing degrees in causing the injuries, the resulting harm to the plaintiff is not divisible. It is possible therefore that a single defendant may be called on to pay for the plaintiff's damages for which all of such defendants are responsible, in amounts in excess of that defendant's proportionate fault for the injuries, or for all of such damages. You may not speculate whether, or how, or from what resources, any such defendant or defendants might pay a possible judgment against them. Your duty is to fix the fault, if any, of each defendant based solely on the evidence before you and the instructions of the court.

We believe that this instruction better effectuates the policy of

fully informing the jury regarding the consequences of its verdict.

The order of the District Court denying the plaintiff's motion for new trial is

**AFFIRMED.**

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____


_____
Justices

9

Justice John C. Sheehy, dissenting:

I dissent. Instruction no. 35 (set out in full in the majority opinion) is a faulty instruction that should have never been given. It is incomplete, allows for speculation by the jurors, allowed counsel for the State to argue improperly thereon, and it abrogated the joint and several rule of liability.

The statute in effect at the time of this case (it has since been amended) allowing joint and several liability provided:

> (1) Whenever the comparative negligence of the parties in any action is an issue and recovery is allowed against more than one party, each party is jointly and severably liable for the amount awarded to the claimant but has the right of contribution from any other party against whom recovery is allowed. Contribution shall be proportional to the negligence of the parties against whom recovery is allowed.

Section 27-1-703(1), MCA (1978).

When the foregoing statute is compared to the instruction given by the District Court, it is apparent that the instruction was defectively incomplete. First, the instruction singled out the effect of a judgment as to one of the defendants, State of Montana, although there were two defendants in this action. A proper instruction would have told the jury that each party is jointly and severally liable, and that there is a right of contribution in favor of one party who pays more than his proper share of the judgment. One might argue in this case that such a full instruction would allow the jury to speculate as to whether the State of Montana could recover any contribution from Eder, but

10

that is no more speculative than the instruction given, which allowed the jury to speculate that Eder could not pay any part of the judgment. The majority recognize these defects, because their suggested instruction does not single out one defendant over another.

The given instruction allowed the jury to speculate as to matters _outside_ the evidence in this case, notably whether after a judgment was rendered, the defendant State of Montana would have to pay the whole judgment because Eder himself was not responsible for any amount. Attorneys for the State strove to get that implication across to the jury.

It may be a salutary thing that juries be informed as to the effect of their verdicts; in any event, they should be _fully_ informed and the information given should be _neutral_ as to the parties involved.

Based on the given instructions, the attorneys for the State engaged in an improper and dishonorable closing argument. By the argument, the jury's attention was drawn away from the issues in the case, essentially here as to whether the State of Montana was negligent in the construction and maintenance of the highway so as to be a proximate cause of plaintiff's injuries. The jury was left instead to speculate on the fairness or equity of the joint and several liability rule. I am amazed that the majority tolerate that kind of argument. The instruction permitted the State's attorneys to appeal to the prejudices or sympathies of the jury, either prejudice against Eder, or sympathy for the State even if

it had been negligent in causing injuries to the plaintiff. It is a cardinal principle of trial law that the trier of fact must confine his or its decision to the evidence <u>in the record</u>. Whether or not either defendant could pay the judgment was outside the record. Whether the State of Montana could recover contribution from Eder was outside the record. Such matters had no place in the jury's consideration of the facts in this case, yet those matters are exactly what the argument of the State attorneys invited.

Because of the faulty instruction and the improper argument based upon it, I would reverse and remand for a new trial.

John C. Sheehy
Justice

I concur in the foregoing dissent of Justice Sheehy.

William E. Hunt
Justice

12