983 P.2d 834

The RICHARD J. AND ESTHER E. WOOLEY TRUST, dated July 24, 1970, Richard J. Wooley, Trustee, d/b/a Phillippi Plaza Apartments, Plaintiffs–Appellants,

v.

DEBEST PLUMBING, INC., an Idaho corporation, Defendant–Respondent,

and

Dale Byers, Defendant.

No. 24734.

Supreme Court of Idaho, Boise, February 1999 Term.

Aug. 3, 1999.

Hall, Farley, Oberrecht & Blanton, Boise, for appellants. Joshua S. Evett argued.

Tolman Law Office, Twin Falls, for respondent. Jennifer K. Brizee argued.

SCHROEDER, Justice.

This is an appeal from a judgment entered in district court following a jury trial. The plaintiff-appellant, Richard J. and Esther E. Wooley Trust, dated July 24, 1970, Richard J. Wooley, Trustee, d/b/a Phillippi Plaza Apartments (Phillippi Plaza), asserts that the district court erred in denying its motion for new trial and in granting DeBest Plumbing, Inc.'s (DeBest) motion for discretionary costs under Rule 54(d)(1)(D) of the Idaho Rules of Civil Procedure. One of the issues before the jury below was whether an employee of DeBest was acting within the scope of his employment while attempting to repair a water leak in an apartment at Phillippi Plaza. The jury concluded that the DeBest employee was not acting within the scope of his

employment. The main question before this Court is whether a jury instruction given by the district court accurately defined the term "scope of employment."

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Jason Garlock (Garlock) was a resident at the Phillippi Plaza Apartments. In late 1993, he approached the manager of Phillippi Plaza about a leaky pipe in his apartment. Since Phillippi Plaza's customary plumber no longer serviced the apartments, Garlock suggested that he might be able to get someone from DeBest (where he worked) to look at the leak quicker than the manager could. Garlock and the manager did not discuss the cost of the project, but the manager assumed that DeBest would bill her if it did the work.

Garlock asked a coworker from DeBest, Joe Carlton (Carlton), what would be involved in having someone from DeBest look at the leak. Garlock could not do the work himself because he was not a plumber. Carlton had been a DeBest employee for sixteen years, but he did not consider himself to be Garlock's supervisor. Nevertheless, Carlton told Garlock that if Garlock could find someone who would be willing to go out and look at the leak in the apartment, then he saw no problem. Garlock then approached Dale Byers (Byers) about repairing the leak. Carlton testified he did not order Byers to fix the leaky pipe.

Byers was a "field superintendent" for DeBest who worked mainly in the office, scheduling the crews and the service work. He was on call twenty-four hours a day. DeBest provided him with a company truck which DeBest maintained and provided gas.

Although at the relevant time period DeBest only serviced warranty work on projects the company had done in the past, the company would charge a fee to service work that was non-warranty. Normally when Byers did service work for an apartment complex, he left a bill. However, Byers testified that he never intended to bill for the work he was going to do for Garlock.

DeBest's working hours were 8:00 a.m. to 5:00 p.m. Byers left work after 5:00 p.m. on the night of the repair and drove to Phillippi Plaza. He did not speak with the apartment manager before attempting the repair. Garlock's wife indicated that Byers brought a blow torch and a ticket or invoice book into the apartment, but later admitted that she did not know what the clipboard was and had assumed it was such. Subsequent to Byers' repair work, a fire broke out in the apartment.

Phillippi Plaza sued DeBest and Byers, alleging that Byers caused the fire and was acting for DeBest at the time of the repair work. Default judgment was entered against Byers. The case was tried to jury which returned a verdict in favor of DeBest. Judgment was entered against Phillippi Plaza. DeBest filed a memorandum of costs. Phillippi Plaza moved for a new trial and also moved to disallow DeBest's memorandum of costs. The district court denied the motion for new trial and awarded costs to DeBest. Phillippi Plaza appealed, claiming error by the district court in denying the motion for new trial and awarding discretionary costs to DeBest.

## II.

## STANDARD OF REVIEW

The standard of review when reviewing jury instructions on appeal requires [this Court] to determine whether the jury was properly and adequately instructed. Accordingly, [the Court] must review the instructions and ascertain whether the instructions, when considered as a whole, fairly and adequately present the issues and state the applicable law. *Brooks v. Gigray Ranches, Inc.*, 128 Idaho 72, 76, 910 P.2d 744, 748 (1996) (quoting *Manning v. Twin Falls Clinic & Hosp., Inc.*, 122 Idaho 47, 50, 830 P.2d 1185, 1188 (1992)). "When considering an appeal from a district court's ruling on a motion for new trial, this Court applies the abuse of discretion standard." *Hughes v. State, Idaho Dep't of Law Enforcement*, 129 Idaho 558, 561, 929 P.2d 120, 123 (1996).

## III.

### THE DISTRICT COURT'S INSTRUCTIONS DID NOT MISSTATE THE LAW.

■ Phillippi Plaza maintains that Jury Instruction No. 10 which was given to the jury was erroneous due to the inclusion of the second paragraph which uses the term "assigned." The jury instruction reads as follows:

If Dale Byers was acting within the scope of his employment at the time he was attempting to repair the water leak, then DeBest Plumbing would be liable for any damage caused by the negligence of Dale Byers.

An employee is acting within the scope of his employment when he is doing the work assigned by his employer, or is doing that which is proper, usual, and necessary to accomplish the assigned work, or is doing that which is customary in the particular trade or business to accomplish the assigned work.

An employee's conduct is within the scope of his employment if, but only if:

(a) the conduct is of the kind he is employed to perform; and

(b) the conduct occurs substantially within that period of the day during which the employer has the right to control the employee's conduct and within the general area or locality in which the employee is authorized to work; and

(c) the employee's purpose is, at least in part, to further his employer's business interests. If the employee acts from purely personal motives which are in no way connected with his employer's business interests, then the employee is not acting within the scope of his employment.

Phillippi Plaza Apartments has the burden of proving that when Dale Byers was attempting to repair the water leak, he was acting within the scope of his employment with DeBest Plumbing.

Phillippi Plaza contends that the second paragraph in the instruction conflicts with Idaho Jury Instruction (IDJI) No. 253, which reads in relevant part:

An agent is acting within the scope of his authority if he is engaged in the transaction of business which has been assigned to him by his principal, or if he is doing anything which may reasonably be said to have been contemplated as a part of his employment. It is not necessary that an act or failure to act must have been expressly authorized by [the] principal.

IDAHO JURY INSTRUCTIONS No. 253 (1982). Phillippi Plaza argues that Jury Instruction No. 10 required it to show that DeBest affirmatively assigned Byers to the job before he could be found to have acted within the scope of his employment, contrary to the last sentence of IDJI No. 253. Phillippi Plaza also maintains that Jury Instruction No. 10 omits the "disjunctive clause" that permits a jury to find that an agent acted within the scope of his employment if he was "doing anything which may reasonably have been said to have been contemplated as a part of his employment."

The language from the second paragraph in Jury Instruction No. 10 was quoted directly from section 7:10 of the Colorado Jury Instructions 3d. COLORADO JURY INSTRUCTIONS 3d § 7:10 (1988). Nevertheless, the Court must address whether the Colorado language included in the instruction misstates Idaho law.

■ Byers was a "servant" of the "master" DeBest in that Byers was an employee of DeBest, and as a consequence, DeBest was potentially subject to vicarious liability for Byers' torts. W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS § 70, at 501 (5th ed. 1984). DeBest's vicarious liability "extends to any and all tortious conduct of the servant which is within the 'scope of the employment.' " *Id.* at 502. The question is, what is the definition of scope of employment?

PROSSER AND KEETON ON TORTS explains that scope of employment

refers to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded

as methods, even though quite improper ones, of carrying out the objectives of the employment.

*Id.*

■ RESTATEMENT (SECOND) OF AGENCY § 228, which resembles the third paragraph in Jury Instruction No. 10, states in relevant part:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

RESTATEMENT (SECOND) OF AGENCY § 228 (1958). Therefore, if the employee's purpose is purely personal, it does not matter that the employee is using the employer's tools or driving the employer's vehicle or some other activity that merely resembles his or her employment. The employee must be engaged in some type of work that is assigned to him or her in the general sense of doing something to serve the employer.

The Court of Appeals also explained this concept in *Podolan v. Idaho Legal Aid Services, Inc.,* 123 Idaho 937, 854 P.2d 280 (Ct. App.1993):

The scope of one's employment encompasses

those acts which are so closely connected with what the servant is supposed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of employment.

... [I]n general the servant's conduct is within the scope of his employment if it is of the kind which he is employed to perform, occurs substantially within the authorized limits of time and space, and is actuated, at least in part, by a purpose to serve the master.

"An employee's purpose or intent, however misguided in its means, must be to further the employer's business interests. If the employee acts from 'purely personal motives ... in no way connected with the employer's interest' ... then the master is not liable."

*Id.* at 944–45, 854 P.2d at 287–88 (quoting *Birkner v. Salt Lake County,* 771 P.2d 1053, 1056–57 (Utah 1989)) (citations omitted). Here again, it is apparent that serving the "master" is required in order for the conduct to be within the scope of employment.

The issue is whether Jury Instruction No. 10 unduly restricts the potential liability of DeBest to a showing that DeBest affirmatively assigned Byers to repair the plumbing at Garlock's apartment. Reading the instruction as a whole indicates that it is not impermissibly restrictive. The instruction does not state that the particular job must be assigned. The terms "work assigned" or "assigned work" used in this context encompass a broader meaning, including work that "is, at least in part, to further his employer's business interests" and that is not for "purely personal motives which are in no way connected with his employer's business interests." A more explicit statement in the instruction would eliminate all question, but the instruction (as framed) accurately states the law.

## IV.

### THE DISTRICT COURT ERRED IN ADMITTING THE OPINION TESTIMONY OF DEBEST'S PRESIDENT REGARDING WHETHER BYERS WAS ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT WHEN HE REPAIRED THE LEAKY PIPE AND IN REFUSING TO CONSIDER THE MOTION FOR NEW TRIAL BASED ON THAT CLAIM; BUT THE ERRORS WERE HARMLESS.

Idaho Rule of Evidence 701 (I.R.E.) provides that a lay witness' testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understand-

ing of the testimony of the witness or the determination of a fact in issue." The following is an excerpt of DeBest's president, Milford Terrell, that was objected to by Phillippi Plaza:

Q  BY MR. TOLMAN: Do you believe that your company is at fault for this fire?

A No.

Q  Do you believe that Dale Byers was there operating within the scope of his employment at the time the fire started?

A No.

MR. FARLEY: Objection, Your Honor. It asks for a conclusion and is also asking to invade the province of the jury and basically asks for a legal conclusion.

THE COURT: I will overrule the objection.

Q  BY MR. TOLMAN: You can answer. Do you think he was there operating within the scope of his employment as a De-Best employee?

A No, he was not.

The witness was asked for his opinion as to whether Byers was working within the scope of his employment, the ultimate issue in the case. Phillippi Plaza objected and sought a new trial before the district court on the basis that the opinion was improperly admitted.

The district court refused to consider Phillippi Plaza's motion for a new trial based on the admission of the "lay opinion" because Phillippi Plaza did not provide a transcript of the testimony. The following is an excerpt from the hearing on the motion for a new trial:

MR. EVETT: All right. The second error at trial, Phillippi Plaza submits, was Mr. Terrell's testimony—

THE COURT: Do you have a transcript of that testimony?

MR. EVETT: I do not have it.

THE COURT: I will not consider that without a transcript. I'm not going to consider an allegation of what was said out of context without a transcript.

There is no case authority or Idaho rule that requires that a motion for a new trial based on an erroneous admission of evidence be accompanied by a transcript. DeBest re-

lies on *O'Dell v. Basabe,* 119 Idaho 796, 810 P.2d 1082 (1991), to support the district court's decision not to consider the motion for new trial on this ground. The *O'Dell* court explained that "[i]t is incumbent upon counsel to set out the legal basis for each motion, set forth the basis in the record upon which the motion rests, and specify the applicable Rule of Civil Procedure." *Id.* at 809, 810 P.2d at 1095. However, as Phillippi Plaza notes, Rule 59(a)(7) of the Idaho Rules of Civil Procedure (I.R.C.P.) merely requires a party making a motion for a new trial on the basis of an error in law to "set forth the factual ground therefor with particularity." This Court explained that the purpose of the rule demanding particularity is

"first, to shorten the statement of the evidence by excluding everything irrelevant to the specified fact; and, second, to notify the opposite party of the particular finding called in question in order that he may see that the statement fairly and fully presents the evidence bearing upon that particular matter."

*Scafco Boise, Inc. v. Rigby,* 98 Idaho 432, 434, 566 P.2d 381, 383 (1977) (quoting *Palmer v. Northern Pac. Ry. Co.,* 11 Idaho 583, 586–87, 83 P. 947, 948 (1905)). In this case, Phillippi Plaza described Terrell's testimony with particularity in its memorandum supporting the motion for a new trial. DeBest did not object to Phillippi Plaza's characterization of Terrell's testimony in its opposing memorandum. Given that DeBest did not contest Phillippi Plaza's facts, it does not appear that a trial transcript was necessary to effectuate the two purposes of the rule demanding particularity noted above. *O'Dell* requires the moving party to set forth the basis of its motion in the record. In this case, Phillippi Plaza accurately set out the factual grounds for a motion for a new trial. That factual basis was not contested. Doubtless, there are cases in which a trial court must have a transcript and may require its production. But in this case, where the factual basis was set forth and not contested, the district court should have either considered the motion or continued the hearing for production of the transcript. Regardless, a review of the record demonstrates that any

error in declining to consider the motion or continuing the hearing for production of a transcript was harmless. For the reasons stated below, consideration of the motion would not have resulted in a new trial.

■ DeBest argues that Terrell was merely summarizing his previous testimony. However, there is no authority that allows a lay witness to give his opinion on a matter if the opinion's purpose is to summarize previous testimony. It was the province of the jury to decide whether Byers was acting within the scope of his employment. Therefore, the district court erred by allowing Terrell to answer.

■ The next question is whether the admission of the testimony warrants a new trial. "No error in either the admission or the exclusion of evidence is grounds for granting a new trial or for setting aside a verdict unless refusal to take such action appears to the court to be inconsistent with substantial justice." *Burgess v. Salmon River Canal Co., Ltd.*, 127 Idaho 565, 575, 903 P.2d 730, 740 (1995). *See also* I.R.C.P. 61 which addresses harmless error ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). In this case, it was clear to the jury that Terrell was an interested witness. It is unlikely that the jury was influenced by Terrell's opinion. There was substantial evidence from Byers and Terrell, other than the opinion, that Byers was doing a favor for Garlock and not acting for DeBest.

## V.

## THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN AWARDING CERTAIN COSTS UNDER I.R.C.P. 54(d)(1)(D).

### A. Standard of Review

■ Under I.R.C.P. 54(d)(1)(D), a prevailing party may seek discretionary costs: Additional items of cost not enumerated in, or in an amount in excess of that listed in subparagraph (C), may be allowed upon a showing that said costs were necessary and exceptional costs reasonably incurred, and should in the interest of justice be assessed against the adverse party. The trial court, in ruling upon objections to such discretionary costs contained in the memorandum of costs, shall make express findings as to why such specific item of discretionary cost should or should not be allowed. In the absence of any objection to such an item of discretionary costs, the court may disallow on its own motion any such items of discretionary costs and shall make express findings supporting such disallowance.

The award of costs, "as the rule itself provides, is committed to the sound discretion of the district court. The burden is on the party opposing the award to demonstrate an abuse of the district court's discretion and, 'absent an abuse of discretion, the district court's award of costs will be upheld.'" *Zimmerman v. Volkswagen of America, Inc.*, 128 Idaho 851, 857, 920 P.2d 67, 73 (1996) (quoting *Durrant v. Christensen*, 117 Idaho 70, 72, 785 P.2d 634, 636 (1990)) (citations omitted). To determine whether the trial court abused its discretion, this Court makes a three-step inquiry: "(1) whether the trial court correctly perceived the issue as discretionary; (2) whether the trial court acted within the boundaries of its discretion and consistent with the applicable legal standards; and (3) whether the trial court reached its determination through an exercise of reason." *Id.*

### B. Analysis

■ Phillippi Plaza argues that the district court abused its discretion in awarding DeBest discretionary costs of $500.00 for a consulting fee paid to a fire expert, $156.83 for photographs taken for the benefit of the expert, and $471.56 for air fare for DeBest's counsel to fly to California to take depositions. Phillippi Plaza argues that none of the costs was exceptional, citing *Fish v. Smith*, 131 Idaho 492, 960 P.2d 175 (1998). In *Fish*, this Court affirmed the district court's denial of discretionary costs for expert fees and travel expenses in a personal injury case. The district court explained that the reason for denying the request for those costs was because the costs in its estimation were not exceptional, but common in a case of that

nature. *Id.* at 493–94, 960 P.2d at 176–77. Phillippi Plaza reads *Fish* as a determination that expert fees and travel costs are not exceptional. This is incorrect. *Fish* merely applied the abuse of discretion standard and concluded that the district court did not abuse its discretion.

Discretionary costs under Rule 54(d)(1)(D) can include travel expenses along with other expenses such as photocopying, faxes, postage and long distance telephone calls. *Automobile Club Ins. Co. v. Jackson*, 124 Idaho 874, 880, 865 P.2d 965, 971 (1993). This Court has affirmed discretionary costs for photographs, *see Luna v. Shockey Sheet Metal & Welding Co.*, 113 Idaho 193, 197–98, 743 P.2d 61, 65–66 (1987), and has found that a trial court may assess additional expert witness fees under I.R.C.P. 54(d)(1)(D). *Turner v. Willis*, 116 Idaho 682, 686, 778 P.2d 804, 808 (1989).

The district court's order awarding the discretionary costs reveals: (1) the district court correctly perceived the issue as discretionary; (2) there is nothing that indicates that the district court acted outside the boundaries of its discretion or inconsistent with the applicable legal standard; the order states its authority for awarding the fees under I.R.C.P. 54(d)(1)(D), and the district court specifically noted that it found the fees "necessary and reasonable"—the appropriate legal standard; and (3) the district court reached its determination through the exercise of reason when it described the circumstances giving rise to its findings. The district court did not abuse its discretion in awarding the contested fees.

## VI.

### DEBEST IS NOT ENTITLED TO ATTORNEY FEES ON APPEAL.

DeBest makes a claim for attorney fees, apparently based upon section 12–121 of the Idaho Code (I.C.) which provides for an award of attorney fees to a prevailing party in any civil action. Attorney fees on appeal are appropriate under I.C. § 12–121 only if this Court is left with the abiding belief that the appeal was brought or pursued frivolous-

ly, unreasonably, and without foundation. *See Anson v. Les Bois Race Track, Inc.*, 130 Idaho 303, 305, 939 P.2d 1382, 1384 (1997). Phillippi Plaza's appeal was not brought or pursued frivolously, unreasonably and without foundation. Therefore, DeBest's request for attorney fees on appeal is denied.

## VII.

### CONCLUSION

The decisions of the district court are affirmed. DeBest is awarded costs on appeal. No attorney fees are allowed.

Justices WALTERS and KIDWELL, concur.

Justice SILAK, dissenting.

I respectfully dissent from Part V of the Court's opinion because I believe the district court abused its discretion in awarding discretionary costs to respondent DeBest.

This Court has held that Rule 54(d)(1)(D) requires that the party seeking to recover discretionary costs must make an affirmative showing that those costs are exceptional, necessary, and reasonably incurred. *See Automobile Club Ins. Co. v. Jackson*, 124 Idaho 874, 880, 865 P.2d 965, 971 (1993); *Westfall v. Caterpillar, Inc.*, 120 Idaho 918, 926, 821 P.2d 973, 981 (1991); *Fuller v. Wolters*, 119 Idaho 415, 425, 807 P.2d 633, 643 (1991). The trial court should then make "express findings as to why such specific item of discretionary cost should or should not be allowed." I.R.C.P. 54(d)(1)(D). I believe that both DeBest and the district court failed to meet the burdens imposed upon them by Rule 54(d)(1)(D).

In the present case, DeBest's attorney submitted an affidavit in support of the memorandum of costs which generally alleged that the costs were exceptional and necessary. The affidavit failed to detail specific facts in support of those general allegations. At the hearing on the motion to award costs, DeBest's attorney stated, "[W]e believe that we have shown that each of the costs were necessary, exceptionally and reasonably incurred." The only item of costs for which any explanation was offered was the consult-

ing service provided by fire expert Jay Freeman. In support of Mr. Freeman's services, DeBest's attorney said, "That was an individual that we needed in order to better understand the fire damage, the firewall issue, and that certainly is an exceptional cost based on the unique facts of this case."

I believe that DeBest failed to adequately show that the costs, other than those related to the fire expert, were exceptional and necessary. If a party does not attempt to explain why the costs are necessary and exceptional, that party is not entitled to discretionary costs. The party must also show that the costs should be assessed against the adverse party "in the interest of justice." *Automobile Club Ins. Co.*, 124 Idaho at 881, 865 P.2d at 972. The conclusory statements made by DeBest's attorney at the hearing and in the affidavit in support of costs do not meet the standards required by law. I.R.C.P. 54(d)(1)(D). This Court upheld an award of discretionary costs in *Luna v. Shockey Sheet Metal & Welding Co.*, 113 Idaho 193, 743 P.2d 61 (1987), a case which provides an example of a showing that satisfies Rule 54(d)(1)(D). In addition to a statement that the expenses were "reasonably and necessarily" incurred, the supplemental memorandum of costs in *Luna* detailed "what photocopies and photographs were used for, as well as each item's cost." *Luna*, 113 Idaho at 197–98, 743 P.2d at 65–66. The conclusory "showing" set forth by DeBest in the instant case falls far short of that upheld in *Luna*.

Additionally, the trial court's findings were equally conclusory and do not expressly explain why the court found that the costs were exceptional and necessary. I am especially troubled by the district court's award of airfare to DeBest. An attorney might be required to travel to attend a deposition in almost any case. Considering the lengthy nature of civil litigation and the mobility of post-modern society, attorneys are often required to purchase plane tickets to attend out-of-state depositions. If a party is entitled to travel expenses of such an ordinary and mundane nature, it is difficult to say what could not be awarded as an "exceptional" discretionary cost.

The district court might have been aware of additional facts that seemed to justify the award of discretionary costs in this case. Such facts might have provided good reason for the court to exercise its discretion in favor of awarding costs. Unfortunately, the court's findings are so conclusory that it is difficult to discern the reasoning by which the court arrived at its conclusion.

Based on the foregoing, I respectfully dissent from the award of costs.

Chief Justice TROUT, concurs.